UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DAMON FORTE, | |
| Petitioner, | |
| v. | CAUSE NO. 3:25-CV-280-JD-JEM |
| WARDEN, | |
| Respondent. | |

OPINION AND ORDER

Damon Forte, a prisoner without a lawyer, filed a habeas petition challenging a disciplinary decision (ISP-24-11-3015) at the Indiana State Prison in which a disciplinary hearing officer (DHO) found him guilty of possessing a cellphone in violation of Indiana Department of Correction Offenses 121. Following a hearing, he was sanctioned with a loss of one hundred eighty days earned credit time.

Forte argues that he is entitled to habeas relief because the administrative record contained the confession of another inmate, which the court construes as a claim that the administrative record lacked sufficient evidence to support a finding of guilt.

> [T]he findings of a prison disciplinary board [need only] have the support of some evidence in the record. This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. Although some evidence is not much, it still must point to the accused's guilt. It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

Departmental policy defines "possession" as "on one's person, in one's quarters, in one's locker or under one's physical control. For the purposes of these procedures, an incarcerated individual is presumed to be responsible for any property . . . that is located on their person, within their cell or within areas of their housing . . . that are under their control." ECF 9-12 at 6. The administrative record includes a conduct report in which a correctional officer represented that Forte was the sole occupant of his cell. ECF 9-1. When he searched Forte's cell at about 11:00 a.m. on November 19, 2024, he found a cellphone and a charger concealed within a twelve-pack of sodas." *Id.* The administrative record includes photographs of the cellphone and charger. ECF 9-3. It includes a video recording summary in which Lieutenant Draper represented that he reviewed the segment of the video surveillance recording pertaining to 7:00 a.m. to 11:00 a.m. and that Inmate Gibbs was not seen going to Forte's cell. ECF 9-7.

The court has reviewed this four-hour video recording in its entirety and further observes that Forte appeared to be present and awake for a substantial majority of the video recording. ECF 12. The light in his cell is turned on within five minutes, and the occupant leaves on only a single occasion for about twenty minutes. *Id.* No other person is seen approaching his cell during his absence. *Id.*

The administrative record also includes includes an affidavit from Inmate Gibbs in which he attests that the cellphone belonged to him, that he had concealed it in a soda carton, and that he delivered the soda carton to Forte's cell. ECF 9-9. He attests that he did not tell Forte about the cellphone before the search. *Id.* The administrative record contains an email from Officer Jones in which he represents that Inmate Gibbs

2

did meet with him to accept responsibility for the cellphone but that he could not verify Inmate Gibbs' statements due to limited camera availability. ECF 9-8.

The conduct report and the photographs constitute some evidence that Forte possessed a cellphone as defined by departmental policy. Though the administrative record also contains evidence that Forte did not know about the cellphone, the hearing officer was not required to credit that evidence. Therefore, the claim that the administrative record lacked sufficient evidence is not a basis for habeas relief.

Forte argues that he is entitled to habeas relief because correctional staff limited the scope of his request to review the video surveillance recording and because he was not allowed to present the live testimony of Inmate Gibbs. "[T]he inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). However, "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Id.*

The court first considers the request for a video surveillance recording. At screening, Forte requested review of the video surveillance recording from 7:30 a.m. to 8:15 a.m. on November 19, 2024. ECF 9-4. Lieutenant Draper reviewed the video surveillance recording from 7:00 a.m. to 11:00 a.m. and found that it did not show Inmate Gibbs going to Forte's cell. ECF 9-7. Forte argues that correctional staff handled this request for evidence unreasonably because the screening officer had instructed him

3

to limit his video surveillance request to a span of forty-five minutes, and, absent this instruction, he would have requested review of the recording from 6:00 a.m. to noon because he did not know exactly when Inmate Gibbs delivered the cellphone. The Warden responds that the screening officer placed this limitation due to the facility's limited storage capacity and the time necessary to review video recordings.

The relevance of the entire six-hour timeframe seems questionable since a review of the video recording shows that Forte left his cell only from about 8:18 a.m. to about 8:40 a.m. And, as noted above, Lieutenant Draper reviewed the video for that 22-minute time period. So, if Inmate Gibbs delivered the cellphone during the period of 6:00 a.m. to noon, the administrative record indicates that Forte would have been present in his cell to receive delivery.

Significantly, Forte's requests for evidence indicate that he had spoken with Inmate Gibbs about the delivery of the cellphone prior to screening. Specifically, his requests for evidence contemplate the existence of the Inmate Gibbs' affidavit and references Inmate Gibbs' meeting with Investigator Jonas to take responsibility for the cellphone. ECF 9-4. Additionally, Forte was awake and present during most of the morning of November 19, which should have enabled him to substantially narrow the scope of this request. Against this backdrop, it is unclear why Forte was unable to identify the proper timeframe, and the court cannot find that the 45-minute proposed limitation or the four-hour effective limitation was unreasonable. The court further observes that the correctional officer found the cellphone at 10:51 a.m., rendering any review of the video recording pertaining to times after that time irrelevant.

Relatedly, Forte argues that he is entitled to habeas relief because the hearing officer did not personally review the video recording but instead relied on the summary provided by Lieutenant Draper. Procedural due process does not prevent hearing officers from relying on hearsay evidence in a prison disciplinary hearing, *Crawford v. Littlejohn*, 963 F.3d 681, 683 (7th Cir. 2020), and it is unclear how inmates are harmed by a hearing officer's reliance on a video recording summary prepared by another as long as the summary is accurate and includes any material exculpatory information. Moreover, as set forth above, the court has reviewed the video recording and verifies the accuracy of the summary and that it does not exclude any material exculpatory information. And, even if the video recording had shown Inmate Gibbs delivering a soda carton to his cell, it would not necessarily follow that Forte was not aware of the cellphone contained within. In sum, the video recording had limited probative value, and any failure to review or consider it would have amounted to harmless error.

With respect to the request for the live testimony of Inmate Gibbs, the hearing officer attests that he had inadvertently overlooked the request for live testimony. ECF 9-15. The hearing officer further attests that Inmate Gibbs would not have been allowed to testify in person due to the violent nature of inmates at the facility and because testifying in the presence of Forte would have motivated Inmate Gibbs to testify falsely. *Id.* "Live testimony is the presumption absent a valid reason for proceeding differently. The submission of a written statement is not by itself a valid reason for not appearing . . ." *Ashby v. Davis*, 82 F. App'x 467, 471 (7th Cir. 2003) "The burden is on the state to offer

a rational explanation for the denial of an inmate's request for witnesses." *Wilson v. Davis*, 102 F. App'x 37, 38 (7th Cir. 2004).

The court declines to focus on the hearing officer's justification for why he would have denied the request to present live testimony due to its post hoc nature.[1] The court will instead focus on the actual reason for the denial – inadvertence. Notably, the administrative record included an affidavit from Inmate Gibbs and a letter from an investigator detailing his interview with Inmate Gibbs. ECF 9-8; ECF 9-9. While a written statements is not, by itself, a valid reason for refusing live testimony, the presence of written statements renders the hearing officer's inadvertence in overlooking the request for live testimony more reasonable. A hearing officer presented with a bare administrative record or a lack of statements from witnesses whose testimony might be reasonably expected would be more likely to suspect that evidence might be missing or that the investigative process was incomplete, but such circumstances were not present here. Additionally, nothing in the record suggests that Forte or any other individual reminded the hearing officer of the request for live testimony at any point during the hearing. Considering this context, the court cannot find that the hearing officer's inadvertence in overlooking the request was unreasonable. Moreover, the hearing officer considered Inmate Gibbs' affidavit and the letter from the investigator, and it is

---

[1] That said, this post hoc justification raises some concerns. While it bears some rationality, it would also seem to apply to every disciplinary hearing at this facility in which an inmate requested live testimony from another inmate. Such a universal justification strikes the court as inconsistent with the presumption of live testimony articulated in *Ashby*.

6

unclear what additional probative value Inmate Gibb's live testimony would have provided. ECF 9-6 at 2. Therefore, the denial of evidence is not a basis for habeas relief.

Finally, Forte argues that he is entitled to habeas relief because the hearing officer demonstrated improper bias. He represents that, near the beginning of the hearing, the hearing officer asked him, "Do you have anything to say before I find you guilty?" ECF 2 at 4. He further represents that the hearing officer said, "We didn't believe you," as he explained why he found Forte guilty. *Id.* Forte maintains that this statement suggested that other individuals influenced the hearing officer's decision. The Warden submitted a declaration from the hearing officer in which he denied making these statements and that other individuals did not influence his decision to find Forte guilty. ECF 9-15. The hearing officer attests that he made the decision based solely on the evidence. *Id.*

In the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for improper bias is high." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). "Due process does forbid officials who are directly or substantially involved in the factual events underlying the disciplinary charges, or the investigation thereof, from serving on the board hearing the charge." *Id.* at 667. Predetermining the outcome of the hearing prior to considering the evidence may also constitute improper bias. *Prude v. Meli*, 76 F.4th 648, 658 (7th Cir. 2023).

Assuming it occurred, the question of "Do you have anything to say before I find you guilty?" must be assessed within the context under which it was made. Notably, hearing officers are afforded a presumption of honesty and integrity, and Forte offers

7

little to suggest that the hearing officer's preliminary opinion was based on anything other than the evidence in the administrative record. Indeed, Forte merely speculates that the hearing officer had not reviewed evidence prior to the hearing because he did not personally observe the hearing officer doing so and because the hearing officer did not personally discuss the evidence with him. By contrast, the hearing officer squarely attests that he based the finding of guilt only on the evidence in the administrative record, and this attestation is corroborated by the hearing report. ECF 9-6; ECF 9-15. Further, the hearing officer's language as described by Forte indicates that the hearing officer had yet to make a final decision and that he would not do so until Forte had an opportunity to speak.

While the hearing officer certainly could have framed his question less aggressively, it is often the case that a judge will review the evidence prior to a hearing or bench trial and form a tentative opinion on it. It would not be improper bias for a judge to express its inclination to make a particular finding at a hearing and to seek the parties' input one more time before making a final decision. Consequently, the court cannot find that this question, even assuming it occurred, is sufficient to overcome the presumption of the hearing officer's integrity and honesty.

The alleged statement, "We didn't believe you," is also insufficient to overcome this presumption. To Forte's point, it is possible that the hearing officer's use of the word "we" referred to the improper influence of others on the finding of guilt, but it seems at least equally possible that the hearing officer merely spoke in his representative capacity as a facility employee out of colloquial habit or that he simply

8

misspoke. Forte more specifically posits that the hearing officer improperly relied on Lieutenant Draper's video recording summary, but, given that a hearing officer's personal involvement in the investigation or underlying incident constitutes improper bias, a hearing officer must necessarily rely on the findings and reports of other correctional employees. Consequently, the court cannot find that the hearing officer's alleged statement or his reliance on the video recording amounts to impermissible bias. Therefore, the claim of improper bias is not a basis for habeas relief.

Because Forte has not asserted a valid claim for habeas relief, the habeas petition is denied. If Forte wants to appeal this decision, he does not need a certificate of appealability because he is challenging a prison disciplinary proceeding. *See Evans v. Circuit Court*, 569 F.3d 665, 666 (7th Cir. 2009). However, he may not proceed in forma pauperis on appeal because the court finds pursuant to 28 U.S.C. § 1915(a)(3) that an appeal in this case could not be taken in good faith.

For these reasons, the court:

(1) DENIES the habeas corpus petition (ECF 2);

(2) DIRECTS the clerk to enter judgment and close this case; and

(3) DENIES Damon Forte leave to proceed in forma pauperis on appeal.

SO ORDERED on August 4, 2025

/s/JON E. DEGUILIO  
JUDGE  
UNITED STATES DISTRICT COURT